THE STATE OF OHIO *v.* VANBARG.

(No. MCR74-11537—Decided April 8, 1975.)

Toledo Municipal Court.

*Mr. Charles A. Stupsker,* for plaintiff.
*Mr. R. Martin Galvin,* for defendant.

RESTIVO, J. This cause came on motion to discharge defendant based on the ground the affiant had no legal right to arrest the defendant and further on a motion to suppress the evidence.

There is no dispute as to the facts; briefly, they are as follows:

Affiant, John Kachenmeister, a city of Oregon police officer, who was not on duty, and who was operating his private vehicle on Summit Street in the city limits of Toledo, Ohio, then and there did arrest the defendant and charged him with the illegal use of a hallucinogen, a serious offense contrary to R. C. 3719.41. A warrant was issued subsequent to the arrest, after the filing of the complaint by John Kachenmeister with the Clerk of Toledo Municipal Court.

Prosecutor and defense counsel agree that if the arrest is illegal, the evidence should be suppressed and the case dismissed. Therefore, the only question which this court need decide is whether the arrest was legal.

Since this matter involves a misdemeanor all powers of arrest pertaining to felonies will be left undisturbed, except to state that a very general definition of police duties and responsibilities is found in R. C. 737.11, as follows:

"The police force of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority thereof, and all criminal laws of the state and the United States. The fire department shall protect the lives and property of the people in case of fire. Both the police and fire departments shall perform such duties as are provided by ordinance. The police and fire departments in every city shall be maintained under the civil service system."

The basic provision for the establishment of a municipal police department is found in Section 3, Article XVIII of the Ohio Constitution, which reads, as follows:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The language of Section 3, Article XVIII of the Ohio Constitution, "exercise all powers of local self-government" and "to adopt and enforce within" makes it clear, that a municipality which cannot legislate outside municipal boundaries by its own authority similarly cannot employ its police officers to act outside the same municipal boundaries.

The courts have stated that proposition very clearly, in *Beachwood* v. *Bd. of Elections* (1958), 167 Ohio St. 369, as follows:

"The power of local self-government granted to municipalities by Article XVIII of the Ohio Constitution relates solely to the government and administration of the internal affairs of the municipality, and, in the absence of a statute conferring a broader power, municipal legislation must be confined to that area."

A very forceful and clear statement relative to the above constitutional provision is found in *State, ex rel. Toledo,* v. *Lynch* (1913), 88 Ohio St. 71, at page 97, wherein Chief Justice Shauck states the phrase, "all powers of local self-government" to mean, "such powers of government as, in view of their nature and the field of their operation, are local and municipal in character."

An examination must then be made of several sections of the code to determine what, if any, broader statutory power has been conferred to a municipal police officer.

R. C. 715.05 is the basic statutory provision which gives a municipality a general power to organize, staff and supply a police department:

"All municipal corporations may organize and maintain police and fire departments, erect the necessary buildings, and purchase and hold all implements and apparatus required therefor."

A further amplification of a municipality's authority in the creation of a police department is found in R. C. 737.05, which provides for the composition and control of police departments such as, a chief of police and such other officers, patrolmen and employees, as a legislative authority provides by ordinance:

"The police department of each city shall be composed of a chief of police and such other officers, patrolmen, and employees *as the legislative authority thereof provides by ordinance.* [Emphasis added.]

"The director of public safety of such city shall have the exclusive management and control of all other officers, surgeons, secretaries, clerks, and employees in the police department as provided by ordinances or resolution of such legislative authority. He may commission private policemen, who may not be in the classified list of the department, under such rules and regulations as the legislative authority prescribes."

A section of the Code which gives the most difficulty has to do with the power to arrest without warrant for a misdemeanor. This is found in R. C. 2935.03:

"A sheriff, deputy sheriff, marshal, deputy marshal,

or police officer shall arrest and detain a person found violating a law of this state, or an ordinance of a municipal corporation, until a warrant can be obtained.

"When there is reasonable ground to believe that an offense of violence, or a theft offense as defined in Section 2913.01 of the Revised Code, has been committed, a sheriff, deputy sheriff, marshal, deputy marshal, or police officer may arrest without a warrant any person whom he has reasonable cause to believe is guilty of the violation, and detain him until a warrant can be obtained.

"A constable within the limits of the township in which said constable has been appointed or elected, shall arrest and detain a person found by him in the commission of a misdemeanor, either in violation of a law of this state or an ordinance of a village, until a warrant can be obtained."

The language of the above section does not make clear nor specify that a municipal police officer may arrest for a misdemeanor without warrant, committed in his presence, only in his municipal limits or anywhere in the state of Ohio.

To clarify legislative intent which is not easily ascertainable, two further sections of the Code are now considered as being indicative of the amount of power to be granted or the restrictions to be placed upon the power of a police department.

The first, is R. C. 715.50, which provides for police jurisdictions outside of a municipal corporation on municipal owned or used lands. This certainly would be an unnecessary statutory enactment if R. C. 2935.03 was intended to confer statewide jurisdiction on police officers for the arrest of misdemeanants without a warrant.

The second, is R. C. 737.04, which provides for contracts between municipal corporations for police protection and which, in essence, provides the member of a police department of one municipality, pension or indemnity, for their protection *while performing duties outside their own subdivisions pursuant to such contracts.*

One further variation of this legislative intent is R. C. 737.10 where additional patrolmen in emergency situations

may be called in from another municipal corporation by acts of the mayor or other chief executive.

The final sentence in that section reads, as follows:

"*Law enforcement officers acting pursuant to this section outside the territory of their regular employment have the same authority to enforce the law as when acting within the territory of their regular employment.*" (Emphasis added.)

There is a widespread feeling that a police officer has plenary police powers anywhere within the state limits. The most quoted authority is *State, ex rel. Spaller,* v. *Painesville* (1910), 13 C. C. (N. S.) 577, wherein paragraph one of the syllabus states, as follows:

"1. A duly appointed patrolman of a police department of a city is an officer within the meaning of the laws of Ohio."

It is doubted that such great reliance would be placed in this case if the second syllabus, as follows, were to be read in connection with the first.

"2. A city council has no power to increase or diminish the salary of a police officer, appointed under the civil service provisions of the municipal code, during the term for which he was appointed which is during good behavior."

*State* v. *Zdvoc* (1958), 106 Ohio App. 481, is the only case that does violence to an apparently otherwise universally accepted rule that a misdemeanor arrest without warrant by a police officer cannot be made outside of the corporate limits which he serves, and the court most astoundedly sidestepped the crux of the problem by stating, at page 486: "In the light of this clearly expressed policy of the state, it may well be that the Legislature intended, by the language employed in the first paragraph of Section 2935.03, Revised Code, and the exception stated with respect to constables in the second paragraph, that police officers be authorized thereby to make arrests for a violation of a state law on view without a warrant anywhere in the state." However, the court briefly proceeded to state, "* * * This question, however interesting, does not come to us for determination * * *."

In *State* v. *Elder*, 67 Ohio Law Abs. 385, the court was

faced with the issue as to whether a police chief of a village acting outside the boundaries of said municipality could be held criminally liable by discharging a firearm upon a public highway when it does not appear that said peace officer is in the act of apprehending or pursuing a felon. The headnotes, numbered five and six, state the law in clear and brief terms, as follows:

"5. As a general rule a peace officer has no authority to make arrests without a warrant outside of the territorial jurisdiction in which he is elected or appointed, unless specifically otherwise authorized by law.

"6. A peace officer of a village, acting outside and beyond the territorial limits of the village, can be held criminally liable under §3773.21 R. C. for discharging a firearm upon a public highway when it does not appear that said peace officer is in the act of arresting or pursuing a felon."

It appears that there exists no special statutory authority to give an off-duty municipal police officer power to arrest for a misdemeanor committed outside the territorial boundaries of his municipality.

The arrest, being in effect a warrantless "citizen's arrest," is illegal and motion is granted, the evidence is suppressed and defendant is ordered discharged.

*Motion to suppress granted.*